## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| JALANI E. MARTINEZ, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Case No. 3:20-cv-286 (SRU) |
| | : | |
| TODD BELCOURT, et al., | : | |
| Defendants. | : | |

## INITIAL REVIEW ORDER

Jalani E. Martinez ("Martinez") is confined at the MacDougall-Walker Correctional Institution in Suffield, Connecticut. He has filed a complaint under 42 U.S.C. § 1983 against Essex Police Officer Todd Belcourt ("Officer Belcourt"), Connecticut State Police Trooper Weber ("Trooper Weber"), Connecticut State Police Trooper Ewing ("Trooper Ewing"), Connecticut State Police Trooper Dunning ("Trooper Dunning"), and Connecticut State Police Lieutenant Ceruti ("Lieutenant Ceruti"). He claims that on October 14, 2017, Officer Belcourt and Trooper Ewing failed to intervene while Trooper Weber unlawfully searched him at the scene of a traffic stop and Trooper Ceruti failed to properly investigate the unlawful search. For the reasons set forth below, I dismiss the complaint in part.

### I.    Standard of Review

Under section 1915A of Title 28 of the United States Code, I must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous, malicious, or fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. That standard of review "appl[ies] to all civil complaints brought by prisoners against governmental officials or entities regardless of whether

the prisoner has paid [a] filing fee." *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004) (internal

quotation marks and citation omitted).

　　　　Although detailed allegations are not required, the complaint must include sufficient facts

to afford the defendants fair notice of the claims and grounds upon which they are based and to

demonstrate a plausible right to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The

plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."

*Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "[p]*ro se* complaints 'must be

construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v.

Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*,

470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir.

2010) (discussing special rules of solicitude for *pro se* litigants).

## II.　Facts

　　　　On October 14, 2017, Martinez drove his car southbound on Route 9 to Exit 3 in Essex,

Connecticut. *See* Compl., Doc. No. 1, at 4–5 ¶¶ 1, 9. At the end of the exit ramp, Martinez

crossed Main Street to a stop sign. *Id.* at 4 ¶ 2. As he looked to the left to make sure that it was

clear to turn, he observed an Essex police vehicle at a light on Main Street. *Id.* ¶ 3. After

turning, Martinez traveled a short distance behind another car until he noticed that the same

Essex police vehicle that had been stopped at the light on Main Street was behind him with its

lights flashing. Martinez pulled his car over to the side of the road. *Id.* ¶ 4.

　　　　Officer Belcourt exited his vehicle, approached Martinez's car with his hand on his

weapon, and asked Martinez to roll down his window and to hand over his license and

2

registration.  *Id.* ¶ 6.  Officer Belcourt indicated that Martinez could take off his seatbelt to retrieve his license from his wallet and to reach over to retrieve his registration and insurance cards from the glove compartment.  *Id.* at 4–5 ¶¶ 7–8.

After Martinez handed over his license, registration, and insurance information, Officer Belcourt asked whether he or the male passenger sitting in the front seat of the car possessed any Marijuana.  *Id.* at 5 ¶ 9.  Martinez indicated that he did not have any Marijuana.  *Id.*  The passenger admitted that he possessed three bags of Marijuana.  *Id.*  Officer Belcourt returned to his vehicle to check Martinez's license in the police department's database.  *Id.* ¶ 10.  A short time later, Officer Belcourt asked Martinez to step out and place his hands on the side of the car. *Id.*  Officer Belcourt stated that he would search Martinez for his own safety.  *Id.*  After conducting the search, Officer Belcourt instructed Martinez to move to the back of the car and to place his hands on the trunk.  *Id.*  Martinez complied with all of Officer Belcourt's orders.  *Id.*

At that time, Troopers Weber and Ewing arrived at the scene.  *Id.* ¶ 11.  Trooper Weber informed Martinez that he would be placing him in handcuffs for everyone's safety but that he was not placing him under arrest.  *Id.*  After handcuffing Martinez, Trooper Weber searched him and found three bags of cocaine and a Percocet tablet in his pocket or pockets.  *Id.* ¶ 12.

Officer Belcourt and Trooper Ewing asked the passenger to step out of the car.  *Id.* at 6 ¶ 13.  After the passenger complied with that order, Officer Belcourt and Trooper Ewing searched and handcuffed him.  *Id.*

In response to Martinez's question regarding the basis for the traffic stop, Officer Belcourt stated that Martinez had been speeding and he could smell Marijuana coming from the car.  *Id.* ¶ 15.  Martinez denied that he had been speeding and wondered how Officer Belcourt

3

could have smelled Marijuana given that the windows were all the way up.  *Id.*  Officer Belcourt

stated "stay out of my town and you don't have to worry about that."  *Id.* ¶ 16.  Martinez asked

Officer Belcourt if he "was being racially profiled."  *Id.*

Martinez consented to a search of his car.  *Id.* ¶ 14.  Trooper Weber returned to his

vehicle to retrieve his K-9 dog.  *Id.*  Trooper Weber's dog searched the car but did not find any

contraband in the car.  *Id.* ¶¶ 17–18.

Trooper Weber then pat-searched Martinez again because he was sure that he possessed

additional drugs.  *Id.*  The pat-search revealed no contraband items.  Trooper Weber asked

Martinez if he was wearing underwear.  *Id.* at 7 ¶ 19.  Martinez responded that he was wearing

"thermals."  *Id.*  Trooper Weber sought permission from Martinez to search his underwear.  *Id.*

Martinez did not consent to being searched in that manner at the scene of the traffic stop but

indicated that Trooper Weber could perform the search at the police station.  *Id.* ¶ 20.  Trooper

Weber then stuck his hand inside of Martinez's boxer shorts and touched and squeezed

Martinez's penis and testicles.  *Id.* ¶ 21.  Trooper Weber found no contraband during the search.

*Id.*  Trooper Ewing and Officer Belcourt took no action to intervene in the search.  *Id.* ¶ 22.

Trooper Ewing went back to his vehicle and drove off.  *Id.* ¶ 24.  A short time later,

Trooper Dunning arrived at the scene.  *Id.* ¶ 25.  Officer Belcourt announced to Trooper Dunning

that Martinez had suggested that he had been pulled over because he was black.  *Id.*  Trooper

Weber asked Martinez if he could search the trunk of Martinez's car.  *Id.* ¶ 26.  Martinez

indicated that it did not matter whether he consented to the search or not because Weber would

search the trunk anyway.  *Id.*  Trooper Weber retrieved his K-9 dog and searched Martinez's car

again.  *Id.* ¶ 27.

4

Martinez began to cry because he was humiliated after being searched by Trooper Weber. *Id.* at 8 ¶ 29.  Trooper Dunning asked Martinez why he was upset.  *Id.*  Martinez described what had happened during the search and that he had been sexually assaulted as a child.  *Id.* ¶ 30. After finding no drugs or other contraband in Martinez's car, Trooper Weber called a tow truck to tow the car to a police station.  *Id.* ¶ 31.

Trooper Dunning transported Martinez to the Troop F State Police Station.  *Id.* ¶ 32. Upon arrival at the station, Trooper Dunning informed Martinez that he would be charged with possession of the three bags of cocaine and the Percocet tablet that was found during the first search of his person by Trooper Weber.  *Id.*  Shortly after Trooper Dunning placed Martinez in a holding cell, Officer Belcourt arrived and strip-searched Martinez.  *Id.* ¶ 33.  No contraband was uncovered during the strip search.  *Id.*  Officer Belcourt and Trooper Weber showed Martinez various drugs that were placed on a table in the station to be photographed and suggested that he would be charged with possession of all the drugs displayed on the table.  *Id.* ¶ 34.  Martinez stated that none of the drugs belonged to him.  *Id.* ¶ 35.  Shortly after making a telephone call, Martinez posted bail and police officials released him from custody.  *Id.* ¶ 36.

Martinez later learned that he had been accused of secreting a pouch containing drugs in the area of his crotch.  *Id.* at 10 ¶ 45.  Officer Belcourt and Trooper Weber had photographed the pouch together with the drugs that were found in the pouch.  *Id.*  Martinez requested that both the pouch and the drugs be tested for his DNA.  *Id.* ¶ 46.  Over 190 items were tested for traces of DNA.  *Id.* ¶ 48.  Only three small bags of cocaine tested positive for Martinez's DNA.  *Id.*  The pouch "was not in the possession of the Connecticut State Police crime lab."  *Id.* ¶ 47.

Neither Officer Belcourt, nor Trooper Ewing, nor Trooper Dunning reported or

documented the nature or scope of the fourth search performed by Trooper Weber.  *Id.* at 9 ¶¶ 37–38.  In July 2018, Martinez wrote to the Connecticut State Police Internal Affairs Unit about the allegedly unlawful search performed by Trooper Weber.  *Id.* ¶ 39.  He received no response to his letter.  *Id.*

In February 2019, Martinez sent a second letter to the Connecticut State Police Internal Affairs Unit.  *Id.* ¶ 40.  A week later, Martinez received a response from Lieutenant Ceruti who indicated that he had reviewed the reports generated in connection with the traffic stop but that he was unable to review the video footage from the body cameras worn by the troopers at the scene of the traffic stop or the video footage from the dashboard cameras in their vehicles because the footage was no longer available.  *Id.* ¶¶ 41–42.  Lieutenant Ceruti stated that his investigation had revealed no evidence to substantiate Martinez's claim of assault by Trooper Weber during the search conducted at the scene of the traffic stop.  *Id.* ¶ 43.

On August 9, 2019, Martinez mailed a complaint to the Commission on Human Rights and Opportunities ("CHRO") claiming that Lieutenant Ceruti had failed to properly investigate his allegation that Trooper Weber had sexually assaulted him during a search on October 14, 2017.  *Id.* at 2 ¶ 4; at 10 ¶ 49.[1]  The complaint was received on August 21, 2019 and assigned CHRO No. 2030107.  *Id.* at 2 ¶ 4.  On November 26, 2019, the CHRO issued a release of jurisdiction.  *Id.* at 3 ¶ 5.  Martinez does not allege that he pursued the CHRO complaint any further.  *Id.* ¶ 6.

---

[1]  Although Martinez indicates in his statement regarding his attempt to exhaust his remedies that he mailed the complaint to the CHRO on August 9, 2018, I assume that Martinez meant August 9, 2019 because he alleges that the

### III.    Discussion

The State of Connecticut Judicial Branch website reflects that Martinez was a defendant in a criminal case stemming from his arrest on October 14, 2017 on a drug possession charge. *See State v. Martinez*, Docket No. M09M-cr17-021314-0.  On October 10, 2019, in the Connecticut Superior Court for the Geographical Area of Middletown, Martinez pleaded guilty to one count of possession with intent to sell or dispense a controlled substance other than a narcotic or a hallucinogenic substance in violation of Connecticut General Statutes § 21a-277(b) and a judge sentenced him to two years of imprisonment.[2]  Martinez does not mention his guilty plea, conviction, or sentence and does not challenge the traffic stop or his arrest as unlawful. Rather, his challenge is to the allegedly excessive search performed by Trooper Weber at the scene of the traffic stop.

Martinez contends that Trooper Weber subjected him to an unreasonable search during which he sexually assaulted him; Officer Belcourt and Trooper Ewing failed to intervene to stop the unlawful search; Trooper Dunning failed to report the unreasonable search to a supervisor; and Lieutenant Ceruti failed to properly investigate the allegations regarding the unlawful search by Trooper Weber.  Martinez claims that all five defendants violated his Fourth, Eighth, and Fourteenth Amendment rights in connection with the unreasonable search.  He seeks a declaratory judgment and monetary relief.  He sues the defendants in their individual capacities only.

---

complaint was filed in response to the February 2019 letter that he received from Lieutenant Ceruti regarding the investigation of his allegations of an improper search by Trooper Weber.  *Id.* at 10 ¶ 49.

[2] Information regarding Martinez's arrest, conviction, and sentence may be found at: http://www.jud.ct.gov/judt.htm under Criminal/Motor Vehicle Case Look-up, Convictions – by Docket Number using Case Number M09M-cr17-021314-0 (Last Visited August 11, 2020).

### A.  Declaratory Relief

Martinez seeks declaratory relief "as [the] court sees fit."  Compl. at 12.  Under the

doctrine of *Ex parte Young*, 209 U.S. 123 (1908), a plaintiff may seek prospective injunctive and

declaratory relief to address an ongoing or continuing violation of federal law or a threat of a

violation of federal law in the future.  *See In re Deposit Ins. Agency*, 482 F.3d 612, 618 (2d Cir.

2007); *Ward v. Thomas*, 207 F.3d 114, 120 (2d Cir. 2000).  To the extent that Martinez seeks a

declaration that the defendants violated his federal constitutional rights in the past, such a request

is barred by the Eleventh Amendment.  *See Puerto Rico Aqueduct and Sewer Authority v.*

*Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (the Eleventh Amendment "does not permit

judgments against state officers declaring that they violated federal law in the past"); *Green v.*

*Mansour*, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of *Young* . . .  to

claims for retrospective relief") (citations omitted).  Furthermore, Martinez has not identified any

legal relationships or ongoing violations of his constitutional rights that require resolution by

declaratory relief.  Accordingly, the request for declaratory relief is dismissed.  *See* 28 U.S.C. §

1915A(b)(1).

### B.  Eighth Amendment Claim

Martinez generally alleges that the defendants violated his right to be free from cruel and

unusual punishment under the Eighth Amendment.  *See* Compl. at 1.  He does not offer any other

facts to support that allegation.

The Eighth Amendment is not applicable to the claims of arrestees or pretrial detainees.

*See Conroy v. Caron*, 275 F. Supp. 3d 328, 352 (D. Conn. 2017) ("The Eighth Amendment

applies to the punishment of convicted offenders and does not regulate pre-conviction

interactions between the police and the public.") (citations omitted).  Martinez's claim that the

search conducted by Trooper Weber at the scene of the traffic stop was unreasonable is governed

by the Fourth Amendment.  Furthermore, a claim that unreasonable force was used during the

search would be governed by the Fourth Amendment, rather than the Eighth Amendment.  *See*

*Graham v. Connor*, 490 U.S. 386, 395 (1989) (holding "that *all* claims that law enforcement

officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop,

or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its

"reasonableness" standard . . . .").  Because Martinez had not been convicted or sentenced of a

crime at the time of the traffic stop and search, the claim that the defendants violated his Eighth

Amendment rights is dismissed because it lacks an arguable legal basis.  *See* 28 U.S.C. §

1915A(b)(1).

### C.      Fourteenth Amendment Due Process Claim - Failure to Investigate

Martinez alleges that in July 2018, nine months after the incident during which Trooper

Weber unlawfully searched him by the side of the road, he sent a letter to the State Police

Internal Affairs Unit.  He did not receive a response to that letter.  In February 2019, he sent a

second letter to the Internal Affairs Unit.  In his response to that letter, Lieutenant Ceruti

indicated that neither the video footage from the body cameras worn by Troopers Weber, Ewing,

and Dunning, and Officer Belcourt, nor the video footage from the dashboard cameras of the

police vehicles at the scene of the search was available because the dates for retention of that

footage had expired.  Lieutenant Ceruti stated that he had reviewed the police reports prepared in

conjunction with the search and had determined that Martinez's claim of sexual assault could not

be substantiated and that none of the Troopers involved in the incident had engaged in behavior

that violated Martinez's rights.  Martinez contends that Lieutenant Ceruti failed to properly or thoroughly investigate his allegations.

Martinez has no constitutionally protected right to a proper investigation.  *See Lewis v. Gallivan*, 315 F. Supp. 2d 313, 317 (W.D.N.Y. 2004) ("There is . . . no constitutional right to an investigation by government officials.") (internal quotation marks and citations omitted); *Santossio v. City of Bridgeport*, 2004 WL 2381559, at *4 (D. Conn. Sept. 28, 2004) ("the United States Constitution does not grant plaintiffs a right to an adequate investigation or adequate after-the-fact punishment") (citing cases), *aff'd*, 186 F. App'x 130 (2d Cir. 2006).  Furthermore, a victim of allegedly criminal conduct is not entitled to a criminal investigation or the prosecution of the alleged perpetrator of the crime.  *See Town of Castle Rock v. Gonzales*, 545 U.S. 748, 768–69 (2005) (victim of crime has no procedural or substantive due process interest in investigation or prosecution of perpetrator); *Linda R. S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("in American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another"); *McCrary v. Cty. of Nassau*, 493 F. Supp. 2d 581, 588 (E.D.N.Y. 2007) ("A private citizen does not have a constitutional right to compel government officials to arrest or prosecute another person.").

Accordingly, the fact that Lieutenant Ceruti may not have interviewed witnesses to the search or investigated Martinez's allegations more thoroughly does not constitute a violation of due process under the Fourteenth Amendment.  The allegation that Lieutenant Ceruti failed to properly investigate Martinez's allegations that Trooper Weber had sexually assaulted him during a search at the scene of a traffic stop fails to state a claim upon which relief may be granted and is dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

10

### E.        Fourth Amendment Search Claim

Martinez alleges that he underwent four searches at the scene of the traffic stop.  Officer

Belcourt initiated a pat-down search after asking Martinez to exit his vehicle.  Upon his arrival at

the scene of the traffic stop, Trooper Weber handcuffed Martinez for "everyone's safety" and

then pat-searched Martinez.  During the search, Weber found three bags of cocaine and a

Percocet pill in Martinez's pocket or pockets.  After Weber had his K-9 dog search Martinez's

car, he pat-searched Martinez again.  Weber then conducted a search inside Martinez's pants and

underwear without Martinez's consent.  Martinez does not challenge the first three searches.

Rather, his focus is on the fourth search conducted by Weber.

The Fourth Amendment to the United States Constitution protects citizens' "persons,

houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. Amend.

IV.  The "ultimate touchstone" for an analysis of the constitutionality of a search or seizure

under the Fourth Amendment is "reasonableness."  *Riley v. California*, 573 U.S. 373, 381–82

(2014) (internal quotation marks and citation omitted).

"[S]earches conducted outside the judicial process, without prior approval by judge or

magistrate, are *per se* unreasonable under the Fourth Amendment-subject only to a few

specifically established and well-delineated exceptions."  *United States v. Navas*, 597 F.3d 492,

497 (2d Cir. 2010) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)).  Exceptions to

the warrant requirement include:  consent, *see Schenkloth v. Bustamonte*, 412 U.S. 218 (1973);

automobile searches, *see United States v. Ross*, 456 U.S. 798 (1982); searches incident to an

arrest, *see Chimel v. California*, 395 U.S. 752 (1969); and "stop and frisk" searches, *see Terry v.

Ohio*, 392 U.S. 1 (1968).  During a *Terry* stop, police may stop and briefly detain a person for

investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity "may be afoot," even if the officer lacks probable cause. *Terry*, 392 U.S. at 30. As part of a *Terry* stop, an officer may conduct a pat-down frisk consisting of a "carefully limited search of the outer clothing . . . in an attempt to discover weapons." *Id.*

The search incident to arrest "exception derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (citations omitted). Under that exception, the mere "fact of the lawful arrest" justifies "a full search of the person." *United Slates v. Robinson*, 414 U.S. 218, 235 (1973). Thus, the search conducted in connection with an arrest is not limited to a frisk of a suspect's outer clothing and the removal of weapons but may include the removal of contraband or evidence of a crime. *Id.* at 235–36.

Even in a situation in which a search warrant is not required, the Fourth Amendment requires that the search "be reasonable in its scope and manner of execution." *Maryland v. King*, 569 U.S. 435, 448 (2013); *see also Sloley v. VanBramer*, 945 F.3d 30, 37 (2d Cir. 2019) ("[T]he scope of the search incident to arrest is limited."); *Wilson v. Aquino*, 233 F. App'x 73, 76 (2d Cir. 2007) ("Assuming defendants lawfully arrested [the plaintiff], the reasonableness of any search incident thereto still depended on the manner in which it was conducted."). Determining whether a particular type of search is reasonable requires balancing "the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Riley*, 573 U.S. at 385–86 (citation omitted).

### 1.    Trooper Weber

Martinez concedes that during the second search of his person conducted at the scene of the traffic stop, Trooper Weber found bags of cocaine and a Percocet tablet in one or more of his pockets.  Martinez contends, however, that after the third search uncovered no drugs or other contraband items, there were no facts to suggest that he may have secreted any additional drugs on his person and that he did not consent to Trooper Weber performing an invasive hands-on search of his genital area as he stood on the side of the road.  During that search, Trooper Weber put his hands down Martinez's pants and fondled and squeezed his genitals.  Martinez claims that Weber found nothing in his underwear or the area of his crotch.

It is not entirely clear from the facts alleged whether Martinez had been placed under arrest at the time that Trooper Weber conducted the fourth search of Martinez.  The facts suggest, given that Trooper Weber had placed Martinez in handcuffs prior to the second, third, and fourth searches, that Martinez had either been placed under arrest or that his initial detention pursuant to the traffic stop had "ripened into an arrest."  *See Grice v. McVeigh*, 873 F.3d 162, 167–68 (2d Cir. 2017) ("Handcuffing is ordinarily not incident to a *Terry* stop, and tends to show that a stop has ripened into an arrest" unless "unusual circumstances" require "handcuffing a suspect to [permit an officer to] investigate a reasonable suspicion" of potential danger to himself or to innocent bystanders).  I conclude that Martinez has plausibly alleged that the justification for the fourth search as well as the manner in which it was performed and the location where it was performed were unreasonable, whether the search was made incident to an arrest or as a pat-down search pursuant to the traffic stop.  *See, e.g.*, *Tyus v. Newton*, 2016 WL 6090719, at *10 (D. Conn. Oct. 18, 2016) (denying summary judgment on unlawful search claim where the plaintiff testified that the defendant "searched inside the pockets of [the plaintiff's] pants to seize

13

an assisted-folding knife, and also repeatedly grabbed [the plaintiff's] crotch and buttocks"

because the search may have "exceeded the bounds of a pat down search for narcotics"); *Scalpi*

*v. Town of E. Fishkill*, 2016 WL 858944, at *11 (S.D.N.Y. Feb. 29, 2016) (court could not

conclude, at motion to dismiss stage, that the defendant police officer's post-arrest search of the

plaintiff's breasts, upper thighs, and genital area, described by the plaintiff as rough, excessive

and painful, was reasonable under the Fourth Amendment because it constituted "more than a *de*

*minimus* intrusion"); *Thomas v. O'Brien*, 2010 WL 3155817, at *9 (N.D.N.Y. Aug. 9, 2010)

(after crediting plaintiff's allegations that police officer performed search by shoving his hand

down plaintiff's pants and groping and squeezing plaintiff's genitals and probing plaintiff's

buttocks, while plaintiff was handcuffed on the front porch, it was apparent to the court that

disputed issues of material fact existed "regarding the extent of the search during the arrest,

whether a body cavity search was justified, and whether the circumstances warranted conducting

such a search on the front porch of a residence" that precluded summary judgment in favor of

officer.)  Accordingly, the Fourth Amendment unreasonable search claim will proceed against

Trooper Weber in his individual capacity.

    In addition to alleging that the search performed by Trooper Weber was unreasonable,

Martinez has characterized the conduct of Trooper Weber as a sexual assault.  Courts within the

Second Circuit have analyzed claims that a police officer engaged in sexual misconduct during a

"seizure" under the Fourth Amendment.  *See, e.g.*, *West v. Harkness*, 2018 WL 3748344, at *6

(N.D.N.Y. May 29, 2018) (denying motion for judgment on the pleadings because allegation that

during post-arrest search the defendant officer "pulled down [plaintiff's] pants and briefs and ran

his hand down between [plaintiff's] buttocks touching [plaintiff's] rectum barehanded,"

construed most favorably to plaintiff, stated plausible claim of excessive force or a sexual assault in violation of the Fourth Amendment), *report and recommendation adopted*, 2018 WL 3747811 (N.D.N.Y. Aug. 7, 2018); *Anderson v. Waterbury Police Dep't*, 2017 WL 1157843, at *11 (D. Conn. Mar. 28, 2017) (concluding genuine dispute of material fact existed regarding whether search conducted after arrest that involved officer "using [one] hand to make one swiping motion between [the plaintiff's]  butt cheeks under his underwear, without loosening his belt or removing any of his clothing" constituted an unreasonable use of excessive force); *Santiago v. City of Yonkers*, 2015 WL 6914799, at *6 (S.D.N.Y. Oct. 30, 2015) (acknowledging that search claim may "raise[ ] two distinct Fourth Amendment questions," one that "bear[s] on plaintiff's rights to be free from sexual assault at the hands of a police officer during an arrest" and one that concerns the right "to be free from an unreasonable search."); *Love v. Town of Granby*, 2004 WL 1683159, at *4–6 (D. Conn. July 12, 2004) (recommended ruling denying motion for summary judgment on Fourth Amendment unreasonable search and sexual assault claim based on plaintiff's allegations that during pat search one officer grabbed his scrotum, swore at him and "called him a faggot"), *approved absent objection*, (Order, Doc. No. 70) (D. Conn. July 28, 2004).  I permit Martinez's Fourth Amendment sexual assault claim to proceed against Trooper Weber for further development of the record.

### 2.      Trooper Ewing and Police Officer Belcourt

Martinez alleges that Trooper Ewing and Officer Belcourt were present during the fourth search conducted by Trooper Weber but did not attempt to intervene.  "It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their

presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). "Whether the officer had a 'realistic opportunity' to intervene is normally a question for the jury, unless, 'considering all the evidence, a reasonable jury could not possibly conclude otherwise.'" *Terebesi v. Torreso*, 764 F.3d 217, 244 (2d Cir. 2014) (quoting *Anderson*, 17 F.3d at 557).  I conclude that Martinez has stated a plausible claim that Trooper Ewing and Officer Belcourt failed to intervene to prevent the unreasonable search.  The Fourth Amendment search claims will proceed against Trooper Ewing and Officer Belcourt in their individual capacities.

### 3.    Trooper Dunning

Martinez alleges that Trooper Dunning was not present during any of the searches performed by Trooper Weber at the scene of the traffic stop.  Martinez asserts that he informed Dunning that he was upset about the excessive and improper nature of the search that had been performed by Weber, but Dunning did not report the incident to a supervisor.

A plaintiff seeking to recover money damages under Section 1983 from a defendant in his or her individual capacity must demonstrate "the defendant's personal involvement in the alleged constitutional deprivation."  *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013).  Because Trooper Dunning was not present when the allegedly improper or unreasonable search by Trooper Weber occurred, he could not have participated in the search.  Nor is he liable for failing to intervene to prevent Trooper Weber from engaging in or continuing the search.

Martinez alleges that in a statement in response to the filing of the CHRO complaint against Weber, Dunning acknowledged that Martinez had made him aware of the nature of Weber's search but that he did not think the allegation was serious enough to bring to his supervisor's attention.  Compl. at 10 ¶ 51.  I cannot discern how the decision by Trooper

16

Dunning not to report to a supervisor that Martinez had spoken to him about the nature of the search performed by Trooper Weber violated Martinez's federal constitutional rights.  Trooper Dunning could not have accurately informed his supervisor about Trooper Weber's conduct during the search because he did not observe the search.  Furthermore, there are no allegations that Martinez could not have reported the alleged misconduct by Trooper Weber to a supervisory official of the State Police Department after he arrived at the station or was released on bail.

I conclude that the allegation that Trooper Dunning did not report Martinez's complaint about the alleged unlawful search performed by Weber, prior to Trooper Dunning's arrival at the scene, in and of itself, does not violate Martinez's constitutionally or federally protected rights. Rather, Trooper Dunning's conduct in failing to report Martinez's allegation that the search was excessive or unreasonable to a supervisor constituted negligence at most, which is not actionable under Section 1983.  *See, e.g.*, *Davidson v. Cannon*, 474 U.S. 344, 347–48 (1986) (plaintiff must show abusive conduct by government officials rather than mere negligence); *Daniels v. Williams*, 474 U.S. 327, 333 (1986) (Due Process Clause's protections are not triggered by a lack of due care by prison officials); *Green v. New Jersey State Police*, 2006 WL 2289528, at *4 (D.N.J. Aug. 9, 2006)  ("Green fails to identify or put forth any evidence establishing how either the omission of certain facts from Schusler's report or the officers' lies caused him any constitutional injury. While such actions, if true, constitute improper police conduct, the mere fact that the officers may have escaped discipline does not injure Green's constitutional rights."), *aff'd*, 246 F. App'x 158 (3d Cir. 2007).  Accordingly, the Fourth Amendment search claims asserted against Trooper Dunning are dismissed for failure to state a claim upon which relief can be granted.  *See* 28 U.S.C. § 1915A(b)(1).

17

**D.      Fourteenth Amendment – Equal Protection**

Martinez includes a statement in the introductory paragraph of the complaint, that he is asserting allegations to support a claim that the defendants violated his right to equal protection under the Fourteenth Amendment.  He does not otherwise refer to an equal protection claim.

The Fourteenth Amendment to the United States Constitution declares that "[n]o State shall . . .  deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985).

A plaintiff may state a claim of intentional discrimination in violation of the Equal Protection Clause by identifying: (1) "a law or policy that expressly classifies persons on the basis of race[;]" (2) "a facially neutral law or policy that has been applied in an intentionally discriminatory manner[;]" or (3) "a facially neutral statute or policy [that] has an adverse effect and . . . was motivated by discriminatory animus."  *Brown v. City of Oneonta, New York*, 221 F.3d 329, 337 (2d Cir. 2000) (internal citation and quotation omitted), *overruled in part on other grounds by Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002)).  A plaintiff is not required to plead that a "similarly situated group of individuals of a different race" were treated more favorably to "establish a claim of denial of equal protection" under these three theories.  *Pyke v. Cuomo*, 258 F.3d 107, 110 (2d Cir. 2001).  A plaintiff may also plead an equal protection violation under a selective enforcement theory.  To state a selective enforcement claim, a plaintiff must allege that: "(1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent

18

to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234 (2d Cir. 2004) (citation omitted).

Martinez includes allegations that he did not find the reasons offered by Officer Belcourt for traffic stop – traveling at an excessive rate of speed and the smell of Marijuana emanating from his car-- to be credible and accused Officer Belcourt of engaging in racial profiling. Officer Belcourt did not respond to Martinez's accusation that the stop was motivated by his race but did inform Trooper Dunning about the accusation after Dunning arrived at the scene. Martinez does not deny that he or his passenger was smoking Marijuana in the vehicle and concedes that his passenger confessed to possessing three bags of Marijuana when questioned by Officer Belcourt.

I conclude that there are insufficient facts to support Martinez's contention that the act of stopping his vehicle was undertaken by Officer Belcourt in an intentionally discriminatory manner or was motivated by racial animus. *See Buckner v. Shumlin*, 2013 WL 6571814, at *9–10 (D. Vt. Dec. 13, 2013) ("Despite alleging 'facts consistent with a discrimination claim[,]' Buckner's claim 'nevertheless stops short of the line between possibility and plausibility of entitlement to relief . . . because plaintiff[ ] do[es] not allege any facts supporting an inference of racial animus.'") (quoting *Sanders v. Grenadier Realty, Inc.,* 367 F. App'x 173, 175 (2d Cir. 2010)). Nor has Martinez alleged that similarly situated individuals, non-African American individuals were treated differently in order to state a selective enforcement claim. As such, the allegation that Martinez was stopped because he was black does not state a violation of the Equal Protection Clause of the Fourteenth Amendment. *See Hollins v. S. Burlington Police Dep't*,

19

2020 WL 1033335, at *7 (D. Vt. Mar. 3, 2020) ("In the absence of further factual allegations,

Plaintiff's bare allegation [that police officers targeted him because of the color of his skin] does

not plausibly give rise to a claim of racially motivated discrimination.") (citing *Garzon v. Jofaz*

*Transp., Inc.*, 2013 WL 783088, at *3 (E.D.N.Y. Mar. 1, 2013) (dismissing claim where

allegations did "little more than cite to [plaintiff's] mistreatment and ask the court to conclude

that it must have been related to . . .  race")); *Traylor v. Hammond*, 94 F. Supp. 3d 203, 215 (D.

Conn. 2015) (concluding plaintiff's "mere[] alleg[ations] that he is African–American, that

[officer] engaged in certain actions, and that he would not have engaged in these actions if

[plaintiff] were another race" were insufficient to "to raise a right to relief [under the Equal

Protection Clause of the Fourteenth Amendment] above the speculative level").  Accordingly,

the Fourteenth Amendment racial profiling claim is dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

      **It is hereby ordered that:**

      **(1)**     The request for declaratory relief, the Eighth Amendment claim of cruel and

unusual punishment asserted against all defendants, the Fourteenth Amendment due process

claim asserted against Connecticut State Police Lieutenant Ceruti, the Fourth Amendment search

claims asserted against Connecticut State Trooper Dunning, and the Fourteenth Amendment

equal protection claim asserted against Essex Police Officer Belcourt based on racial profiling

are **DISMISSED** under 28 U.S.C. § 1915A(b)(1).  Thus, all claims against Connecticut State

Police Lieutenant Ceruti and Connecticut State Police Trooper Dunning have been

**DISMISSED**.  The Fourth Amendment claims that Connecticut State Trooper Weber engaged in

an unreasonable and invasive search of Martinez and sexually assaulted Martinez during the

search will **PROCEED** against Connecticut State Troopers Weber and Ewing and Essex Police

Officer Belcourt in their individual capacities.

(2) **Within 21 days of the date of this order,** the Clerk shall mail a copy of the Complaint, this Order, and a waiver of service of process request to: defendant Essex Police Officer Todd Belcourt at the Essex Police Department, 29 West Avenue, Essex, Connecticut 06426; defendant Connecticut State Trooper Weber at the Connecticut State Police Department – Troop F, 315 Spencer Road, Westbrook, Connecticut 06498; and defendant Connecticut State Trooper Ewing at the Connecticut State Police Department – Troop F, 315 Spencer Road, Westbrook, Connecticut 06498.  On the thirty-fifth (35th) day after mailing, the Clerk shall report to the Court on the status of the requests.  If any defendant fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) Defendants Belcourt, Ewing, and Weber shall file their response to the Complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.  If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(4) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within six months (180 days) from the date of this order. Discovery requests and responses should not be filed with the Court.

(5) All motions for summary judgment shall be filed within seven months (210 days) from the date of this order.

**(6)**    The Clerk shall send a courtesy copy of the Complaint and this Order to the

Connecticut Attorney General.

**(7)**    The parties must comply with the District of Connecticut "Standing Order Re:

Initial Discovery Disclosures" which will be sent to the parties by the Clerk.  The order also can

be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders.

        So ordered.

Dated at Bridgeport, Connecticut, this 31st day of August 2020.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge